## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| STEPHEN A. HEUERTZ,<br><br>　　　Plaintiff<br><br>v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>　　　Defendant. | Case No. 8:16-cv-00178<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

### INTRODUCTION

1.　Plaintiff is suing the Defendant because the Defendant harassed the Plaintiff for months with collection robo-calls for a debt the Plaintiff did not owe.

2.　Defendant persistently utilized an auto-dialer to call the Plaintiff's cellular telephone, violating the Plaintiff's privacy rights afforded under federal law.

3.　The United States Supreme Court has recognized a citizen's home as "the last citadel of the tired, the weary, and the sick," *Gregory v. Chicago,* 394 U.S. 111, 125 (1969), and has noted that "[p]reserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value." *Carey v. Brown,* 447 U.S. 455, 471(1980).

### JURISDICTION AND VENUE

4.　Jurisdiction of this Court arises under 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d), 47 U.S.C. § 227, and pursuant to 28 U.S.C. § 1367 for pendent state law

claims, which are predicated upon the same facts and circumstances that give rise to the federal causes of action.

5. This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") and the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA") in their illegal efforts to collect a consumer debt. Injunctive relief is available pursuant to the TCPA.

6. Venue is proper in this District because the Plaintiff resides here and Defendant transacts business here.

7. All allegations in this complaint are based on information and belief and/or the documents and information currently available and in the hands of Plaintiff's attorneys and are such that additional evidentiary support and detail will be forthcoming after a reasonable opportunity for further investigation or discovery.

## PARTIES

8. Plaintiff Stephen A. Heuertz ("Mr. Heuertz" or "Plaintiff") is an individual residing in Hastings, Adams County, Nebraska.

9. The Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

10. The Plaintiff is "any person" as that term is used in 15 U.S.C. § 1692d preface.

11. Defendant Portfolio Recovery Associates, LLC, ("PRA" or "Defendant") is a Delaware limited liability company, which maintains its offices at 120 Corporate Blvd., Norfolk, VA 23502.

12. PRA is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others. Defendant PRA is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6).

13. The acts of Defendant PRA alleged in this Complaint were performed by its employees and/or agents, acting within the scope of actual or apparent authority.

14. All references to "Defendant" or "PRA" shall mean the Defendant PRA or an employee or agent of the Defendant.

## APPLICABLE LAW REGARDING THE TCPA

15. The TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes[.]" *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

16. In enacting the TCPA, Congress intended to give consumers a choice as to how companies can call them, finding that, although "the evidence presented ... indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call," Pub. L. No. 102–243, § 2(13) (1991), *codified at* 47 U.S.C. § 227, "[t]echnologies that might allow consumers to avoid receiving such calls are not universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer[,]" *Id.* at § 2(11).

17. Toward this end, Congress found that "[b]anning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency[,] … is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* at § 2(12).

18. Some of the TCPA's most stringent restrictions pertain to calls placed to cell phones: The statute categorically bans the making of any non-emergency call using an automatic telephone dialing system ("autodialer" or "ATDS") or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service, other than with the "prior express consent" of the called party. *See* 47 U.S.C. § 227(b)(1)(A)(iii); *see also Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 638 (7th Cir. 2012) ("An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.").

19. An "automatic telephone dialing system" is defined in the TCPA as "equipment which has the capacity … (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1). The FCC—charged by Congress to develop the rules and regulations implementing the TCPA—has clarified that an ATDS includes any equipment, such as a predictive dialer, that has the "*capacity* to dial numbers without human intervention." *Griffith v. Consumer Portfolio Serv., Inc.*, 838 F. Supp. 2d 723, 726 (N.D. Ill. 2011) (quoting *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd 14014, 14092, ¶ 132 (2003)) (emphasis in original).

**FACTUAL ALLEGATIONS**

20. Mr. Heuertz's wife filed for bankruptcy protection under chapter 13 of the Bankruptcy Code on or about February 18, 2011 in the United States Bankruptcy Court for the District of Nebraska.

21. Prior to filing her bankruptcy petition, the Plaintiff's wife owed a debt to Citibank (South Dakota) N.A. for an extension of credit ("the debt"). The Plaintiff's wife

listed the debt in her bankruptcy schedules. This credit card debt was for personal, family or household purposes, and is therefore a "debt" as that term is defined by §1692a(5) of the FDCPA.

22. Plaintiff was not a co-signor on the credit card and was never personally obligated to pay the debt.

23. The Plaintiff's wife successfully completed her chapter 13 plan and received a discharge on March 20, 2014.

### *Defendant Mails Plaintiff a Collection Letter For Debt Not Owed By Plaintiff*

24. Shortly after his wife received her discharge from bankruptcy, Defendant mailed a collection letter to Mr. Heuertz demanding payment for the debt. The letter stated that the "Seller" was "CITIBANK (SOUTH DAKOTA) N.A." and that the "Merchant" was "CITIBANK". The "Account Number" was "xxxxxx3341" and the "CURRENT BALANCE" was $10,876.30. The letter stated that the "Creditor to Whom Debt is Owed" is "Portfolio Recovery Associates, LLC". (Personal identifiers redacted).

25. On or about May 7, 2014, Mr. Heuertz called Defendant and asked why they mailed him a collection letter demanding payment of $10,876.30.

26. Mr. Heuertz told Defendant that he was not liable for the debt and that his name was not on the credit card. Plaintiff told Defendant that this debt was his wife's and that she had gone through bankruptcy, which discharged the debt, or words to that effect. The Defendant asked Plaintiff if he was married to his wife when the charges on the card were made. Plaintiff said he was. The Defendant then made a false statement to the Plaintiff to the effect that because he was married to his wife when the charges were made that he, the Plaintiff, was therefore also liable for the debt, or words to that effect.

27. Defendant went on to tell Plaintiff that not only was he liable for the debt of his wife but that this could affect Plaintiff's credit rating, or words to that effect. Defendant asked Plaintiff if he disputed the debt, to which Plaintiff responded that he did. Defendant told Plaintiff that he should mail a letter disputing the debt to Defendant's business address and they would "put this action on hold for two weeks" or words to that effect.

28. Within the aforementioned two weeks, Plaintiff mailed a letter to Defendant, which included the account number listed in the debt collection letter to Plaintiff. Plaintiff's letter to Defendant stated, "I dispute this debt. I do not owe it."

29. After Plaintiff mailed his letter to Defendant, Defendant never mailed any type of verification of the debt, or a judgment, or the name and address of the original creditor to the Plaintiff's address, as required by the FDCPA at 15 U.S.C. § 1692g.

### *Illegal Auto-Dialed Collection Calls*

30. On or about April 22, 2015, Defendant called Plaintiff's cellular telephone number.

31. When Plaintiff answered, Defendant told him that he owed Defendant more than $10,000.00 for the debt. This was a "communication" in an attempt to collect a debt as that term is defined by 15 U.S.C. § 1692a(2).

32. Defendant's failure to cease communication with Plaintiff was an act done in violation of the FDCPA at 15 U.S.C. §1692g(b).

33. Defendant's attempt to collect the debt from Plaintiff which Plaintiff did not owe through the false, deceptive and misleading statement it made on April 22, 2015, was in violation of numerous sections of the FDCPA, including 15 U.S.C. §§ 1692e, 1692e(2), 1692e(5), 1692e(10), 1692f, and 1692f(1), amongst others.

34. Plaintiff again told Defendant that his name was not on the credit card and that he did not owe the debt.

35. At no point previous to this phone call, nor at any time during or after this phone call, did Plaintiff give Defendant permission to call his cellular telephone number.

36. At no point did Plaintiff ever have a credit card issued by the original creditor of the debt.

37. At no point did Plaintiff ever have a business relationship with Defendant.

### *Telephone Consumer Protection Act*

38. Without Plaintiff's prior express consent, Defendant repeatedly used an automatic telephone dialing system to call Plaintiff's cellular telephone in an attempt to collect this debt with many calls after Plaintiff told Defendant that he did not owe the debt and told Defendant to stop calling him.

39. All calls and messages were sent in willful violation of the TCPA and the FDCPA because Defendant never obtained the Plaintiff's prior express consent and had no basis to believe that they had the Plaintiff's prior express consent to make automated calls to his cell phone.

40. Defendant's repeated autodialed collection calls to Plaintiff's cellular telephone, within the last four years prior to filing this complaint, were illegal third-party attempts to collect this debt in violation of the TCPA, 47 U.S.C. § 227 *et seq*.

41. Prior to April 2016, Defendant has been sued numerous times for violations of the TCPA.

42. Mr. Heuertz received a series of automated telephone calls from Defendant to his cellular telephone within the last four years prior to filing this complaint. Defendant made at least the following calls to Plaintiff:

   a. December 29, 2015 at 11:19am

   b. December 28, 2015 at 12:09pm

   c. December 27, 2015 at 2:49pm

   d. December 23, 2015 at 11:00am

   e. December 21, 2015 at 10:25

   f. December 17, 2015 at 10:28am

   g. December 15, 2015 at 10:47am

   h. December 7, 2015 at 10:35am

   i. December 3, 2015 at 9:35am

   j. November 29, 2015 at 6:16pm

   k. November 25, 2015 at 9:56am

   l. November 23, 2015 at 5:49pm

   m. November 21, 2015 at 8:15am

   n. November 17, 2015 at 9:53am

   o. November 9, 2015 at 10:56am

   p. November 5, 2015 at 10:34am

   q. October 28, 2015 at 9:48am

   r. October 26, 2015 at 8:48pm

   s. September 22, 2015 at 7:04pm

   t. September 18, 2015 at 4:02pm

  u. September 16, 2015 at 10:20am

  v. September 8, 2015 at 11:05am

  w. August 31, 2015 at 10:36am

  x. April 22, 2015 at 4:12pm

Upon information and belief, there were many more calls than listed above.

  43. During more than one of the many telephone calls to Plaintiff's cellular telephone by Defendant, Plaintiff told Defendant to quit calling him.

  44. Defendant's repeated autodialed collection calls to Plaintiff's cellular telephone, within the last one year prior to filing this complaint, were illegal third-party attempts to collect this debt in violation of numerous and multiple provisions of the FDCPA, including but not limited to 15 U.S.C. §§ 1692c(a)(1), 1692d, 1692d(5), 1692e, 1692e(5), 1692e(10), 1692f, and 1692f(1), amongst others.

### *Summary*

  45. All of the above-described collection communications made to Plaintiff by Defendant were made in violation of numerous and multiple provisions of the FDCPA, including but not limited to all of the above mentioned provisions, amongst others, as well as an invasion of his privacy by the use of repeated calls.

  46. Plaintiff suffered from emotional distress, including frustration, anxiety, anger and other negative emotions as a direct and proximate result of Defendant's attempts to collect a debt from him that he did not owe.

  47. The Defendant's persistent autodialed calls eliminated the Plaintiff's right to be left alone.

48. These autodialed collection calls disrupted Plaintiff's performance at his job.

49. These persistent autodialed collection calls eliminated the peace and solitude that the Plaintiff would have otherwise had.

50. Defendant's actions constituted the unauthorized use of, and interference with the Plaintiff's cellular telephone service associated with the number ending in 3376 for which the Plaintiff paid money.

51. Plaintiff's privacy was wrongfully invaded, and he has been forced to deal with the aggravation of unwanted phone calls using up airtime and requiring him to divert attention away from business, family, and other activities.

## CLAIMS

## COUNT I.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

## 15 U.S.C. § 1692 *et seq.*

52. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

53. The foregoing acts and omissions of the Defendant and its agents constitute numerous and multiple violations of the FDCPA including but not limited to, each and every one of the above-cited provisions of the FDCPA, 15 U.S.C. § 1692 *et seq.*, with respect to Plaintiff.

54. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up

to $1,000.00 pursuant to 15 U.S.C. §1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. §1692k(a)(3), from Defendant.

**COUNT II.**

**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**

**47 U.S.C. § 227 *et seq.***

55. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

56. It is a violation of the TCPA to call a person's cellular telephone number using an automatic telephone dialing system or an artificial or prerecorded voice. 47 U.S.C. § 227(b)(1)(A)(iii).

57. "Automatic telephone dialing system" refers to any equipment that has "the capacity to dial numbers without human intervention." *Griffith*, 838 F. Supp. 2d at 726 (quoting *In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd at 14092 ¶ 132).

58. The equipment defendant used to make non-emergency telephone calls to the cellular telephone numbers of plaintiff and the other members of the class defined below had the capacity to dial thousands or more numbers in a short period of time without human intervention.

59. These calls were made without regard to whether or not Defendant had first obtained the express consent of the Plaintiff to make such calls. In fact, Defendant did not have permission to call the cell phone of Plaintiff when its calls were made.

60. For example, Defendant made autodialed calls to Plaintiff's cellular telephone number without his consent on December 29, 2015, December 28, 2015,

December 27, 2015, December 23, 2015, December 21, 2015, December 17, 2015, December 15, 2015, December 7, 2015, December 3, 2015, November 29, 2015, November 25, 2015, November 23, 2015, November 21, 2015, November 17, 2015, November 9, 2015, November 5, 2015, October 28, 2015, October 26, 2015, September 22, 2015, September 18, 2015, September 16, 2015, September 8, 2015, August 31, 2015, and April 22, 2015 among other possible instances. Many of these calls were made after Plaintiff directly told Defendant not to call his phone.

61. Defendant has, therefore, violated § 227(b)(1)(A)(iii) of the TCPA by making calls to the cellular telephone numbers of Plaintiff using an automatic telephone dialing system or an artificial or prerecorded voice without the prior express consent of the called party.

62. As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff was harmed and is entitled to a minimum of $500 in statutory damages for each violation.  Plaintiff is also entitled to injunctive relief. 47 U.S.C. § 227(b)(3).

63. Defendant knew or should have known that it did not have Plaintiff's prior express consent for its calls to his cell phone, and/or willfully called the Plaintiff's cell phone using an automatic telephone dialing system or an artificial or prerecorded voice without prior express consent. *See* 47 U.S.C. § 312(f)(1). Consequently, the Court should treble the amount of statutory damages available to Plaintiff under 47 U.S.C. § 227(b)(3).

64. Plaintiff has been substantially damaged. Among other things, his privacy has been improperly invaded, he has lost airtime on his cellular telephone plan and the improper calls caused him to take time to tend to these illegal and nonconsensual calls. *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003) (concluding

that trial-level evidentiary hearing demonstrated that TCPA violations caused significant harm.")

## COUNT III.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

65. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

66. Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy**. 15 U.S.C. § 1692(a) (emphasis added).

67. Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors albeit without a private right of action, when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and confidentiality of those customers' nonpublic personal information.
> 15 U.S.C. § 6801(a) (emphasis added).

68. Defendant and/or its agents intentionally and/or negligently interfered, physically or otherwise, with the solitude, seclusion and or private concerns or affairs of this Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt not owed by the Plaintiff, and calling his cellular telephone, and thereby invaded Plaintiff's privacy.

69. Defendant and their agents intentionally and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this non-existent debt, thereby invading and intruding upon Plaintiff's right to privacy.

70. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs.

71. The conduct of Defendant and their agents, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant which occurred in a way that would be highly offensive to a reasonable person in that position.

72. Nebraska has recognized the right to privacy.

73. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages and costs from Defendant in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendant:

### COUNT I.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT

### 15 U.S.C. § 1692 *et seq.*

- for an award of actual damages for the Plaintiff pursuant to 15 U.S.C. § 1692k(a)(1);

- for an award of statutory damages of $1,000.00 for the Plaintiff pursuant to 15 U.S.C. §1692k(a)(2)(A);

- for an award of costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) for Plaintiff; and

- for such other and further relief as the Court may find to be just and proper.

## COUNT II.

## VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT

## 47 U.S.C. § 227 *et seq.*

- for an award of statutory damages of $500.00 per call pursuant to 47 U.S.C. § 227(b)(3)(B) against Defendant and for Plaintiff;

- for an award of treble damages of $1,500.00 per call pursuant to 47 U.S.C. § 227(b)(3) against Defendant and for Plaintiff;

- for an injunction prohibiting Defendant from contacting the Plaintiff on his cellular telephone using an automated dialing system pursuant to the 47 U.S.C. § 227(b)(3)(a).

## COUNT III.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

- for an award of actual damages from Defendant for the emotional distress suffered as a result of the intentional and/or negligent TCPA and FDCPA violations and intentional and/or negligent invasions of privacy in an amount to be determined at trial and for Plaintiff;

- And, such other and further relief as may be just and proper.

## JURY DEMAND

Plaintiff hereby demands trial by jury of all claims so triable.

Dated: April 20, 2016

Respectfully submitted,

STEPHEN A. HEUERTZ, Plaintiff

By: *s/ Burke Smith*
Burke Smith, #19883
Burke Smith Law
10730 Pacific Street, Ste. 100
Omaha, NE 68114
Tel. (402) 718-8865
Fax (402) 218-4391
Burke@BurkeSmithLaw.com

**ATTORNEY FOR PLAINTIFF**